UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


<u>United States of America</u>

    v.                                Criminal No. 17-cr-094-LM
                                        Opinion No. 2020 DNH 095
<u>Tanner Rich</u>


# O R D E R

Defendant, Tanner Rich, pleaded guilty to one count of conspiracy to possess with intent to distribute fentanyl in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(B)(vi), and 846 in May 2018.  On August 29, 2018, this court sentenced defendant to 60 months of imprisonment and four years of supervised release. Defendant is currently serving that sentence at the Camp at the Federal Medical Center ("FMC") Devens.  He requests that this court grant him compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) based on the danger posed to his health by the combination of his underlying medical condition and the threat of contracting COVID-19 while incarcerated.  The government concedes that defendant has exhausted his administrative remedies under the statute but objects to defendant's request. The court held a telephonic hearing on defendant's motion on May 22, 2020.

**STANDARD OF REVIEW**

A court may grant so-called "compassionate release" to a defendant under 18 U.S.C. § 3582(c)(1)(A).  The statute provides, in relevant part, that:

> [T]he court, upon motion of the Director of the Bureau of Prisons or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i)  extraordinary and compelling reasons warrant such a reduction
> >
> > . . .
> >
> > and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A); see also U.S.S.G. § 1B1.13 (sentencing guidelines policy statement on compassionate release).

Where, as here, a motion for compassionate release is properly before the court, the court must determine if defendant is eligible for release.  The statutory language quoted above requires that defendant show that "extraordinary and compelling

reasons warrant" a reduction in his sentence, that the court consider the factors set forth in 18 U.S.C. § 3553(a) to the extent applicable, and that the reduction be "consistent" with the Sentencing Commission's applicable policy statements. 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission's policy statement regarding compassionate release adds the requirement that the court find that the defendant is not likely to pose a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g). See U.S.S.G. § 1B1.13(2); 18 U.S.C. § 3142(g) (listing factors court should consider in determining whether any conditions of release exist that will "reasonably assure . . . the safety of any other person and the community").

In short, a court may reduce a term of imprisonment under the compassionate release provision if it: (1) finds that extraordinary and compelling reasons warrant the reduction; (2) finds that the defendant is not likely to be a danger to the safety of any other person or the community; and (3) considers the sentencing factors outlined in 18 U.S.C. § 3553(a). See 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13; see also United States v. Sapp, No. 14-CR-20520, 2020 WL 515935, at *2 (E.D. Mich. Jan. 31, 2020); United States v. Willis, 382 F. Supp. 3d 1185, 1187 (D.N.M. 2019). The defendant has the burden of

showing that he is entitled to a sentence reduction.  United States v. Ebbers, No. S402CR11443VEC, 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020).  And the court has "broad discretion in deciding whether to grant or deny a motion for sentence reduction."  United States v. Paul Gileno, No. 3:19-CR-161-(VAB)-1, 2020 WL 1307108, at *2 (D. Conn. Mar. 19, 2020) (internal quotation marks omitted).

## DISCUSSION

I.   Extraordinary and Compelling Reason

Defendant contends that his history of chronic bronchitis and other respiratory illnesses puts him at substantial risk of experiencing severe illness should he contract COVID-19.  He further contends that he has an increased risk of becoming infected with the virus because inmates and staff members at FMC Devens have tested positive.

The Commentary to the Sentencing Guidelines Policy Statement regarding compassionate release identifies four categories of "extraordinary and compelling reasons" that justify a sentence reduction: defendant's medical condition; defendant's age; defendant's family circumstances; and a catchall category.  U.S.S.G. § 1B1.13, App. Note 1.  Under the policy statement, a medical condition constitutes an

"extraordinary and compelling reason" if defendant is suffering

from a terminal illness, or has a serious physical or medical

condition, cognitive impairment, or deteriorating physical or

mental health due to age "that substantially diminishes the

ability of the defendant to provide self-care within the

environment of a correctional facility and from which he or she

is not expected to recover." U.S.S.G. § 1B1.13, App. Note

1(A)(i)-(ii).  The catchall category encompasses any

"extraordinary and compelling reason other than, or in

combination with" the defendant's medical condition, age, or

family circumstances.  See U.S.S.G. § 1B1.13, App. Note 1(D).[1]

In the context of the current pandemic, courts have held

that a generalized risk of infection by the virus is not, by

itself, sufficient to constitute an extraordinary and compelling

---

[1] To the extent the government argues that the court's
discretion is constrained by the definition of "extraordinary
and compelling reasons" in the Bureau of Prison's program
statement on compassionate release, the court disagrees.  See
doc. no. 32 at 4-5.  The Sentencing Guidelines currently define
the catchall category as being "determined by the Director of
the Bureau of Prisons." U.S.S.G. § 1B1.13, App. Note 1(D).
However, that provision has not been amended since the passage
of the First Step Act.  Therefore, this court agrees with those
courts that have held that the Sentencing Guidelines policy
statement "provides helpful guidance" but "does not constrain
the Court's independent assessment of whether 'extraordinary and
compelling reasons' warrant a sentence reduction under §
3582(c)(1)(A)." United States v. Beck, 425 F. Supp. 3d 573, 579
(M.D.N.C. 2019); see also United States v. Bucci, 409 F. Supp.
3d 1, 2 (D. Mass. 2019); United States v. Fox, No. 2:14-CR-03-
DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019).

reason warranting release.  See United States v. Ramirez, No. CR 17-10328-WGY, 2020 WL 2404858, at *3 (D. Mass. May 12, 2020) (collecting cases).  "On the other hand, a combination of health and age factors that put a prisoner at a substantially higher risk due to COVID-19 along with a documented risk of the disease in the facility where the prisoner is incarcerated may demonstrate extraordinary and compelling reasons to reduce the prisoner's sentence." United States v. Bischoff, No. 17-CR-196-JD, 2020 WL 2561423, at *2 (D.N.H. May 19, 2020) (collecting cases in support); see also, e.g., Ramirez, 2020 WL 2404858, at *9 (granting compassionate release to 57-year old inmate suffering from diabetes and hypertension housed in a facility where several inmates and staff had tested positive for the virus).

     In determining whether a prisoner is at a particularly high risk of experiencing severe illness from COVID-19, courts have generally looked to the Centers for Disease Control and Prevention ("CDC") guidelines.  See, e.g., United States v. Ullings, No. 1:10-CR-00406, 2020 WL 2394096, at *1 (N.D. Ga. May 12, 2020); United States v. Dunlap, No. 1:02CR165-1, 2020 WL 2062311, at *2 (M.D.N.C. Apr. 29, 2020).  The CDC emphasizes that "COVID-19 is a new disease and there is limited information

regarding risk factors for severe disease."[2]  Based on the
limited information known, the CDC has identified certain
categories of people as being at "high-risk for severe illness
from COVID-19."  Those high-risk individuals include "[p]eople
of all ages with underlying medical conditions, particularly if
not well controlled, including: People with chronic lung disease
or moderate to severe asthma . . . ."[3]  The CDC describes
"chronic lung disease" as including chronic obstructive
pulmonary disease (COPD) (including emphysema and chronic
bronchitis)."[4]

        Defendant's medical records demonstrate that he has a
history of bronchitis and other respiratory issues sufficient to
put him at a higher-risk for severe illness from COVID-19.  Most
importantly, in December 2016, defendant was treated for
bronchitis and his treating physician wrote that defendant "is

---

        [2] CDC, <u>People Who Are at Higher Risk for Severe Illness</u>,
<u>https://www.cdc.gov/coronavirus/2019-ncov/need-extra-</u>
<u>precautions/people-at-higher-risk.html</u>  (last visited May 22,
2020).

        [3] CDC, <u>People Who Are at Higher Risk for Severe Illness</u>,
<u>https://www.cdc.gov/coronavirus/2019-ncov/need-extra-</u>
<u>precautions/people-at-higher-risk.html</u>  (last visited May 22,
2020).

        [4] CDC, <u>Groups at Higher Risk for Severe Illness</u>,
<u>https://www.cdc.gov/coronavirus/2019-ncov/need-extra-</u>
<u>precautions/groups-at-higher-risk.html</u> (last visited May 22,
2020).

prone to bronchitis and has a history of reactive airway disease."  Def.'s Ex. A at 1-2.  Defendant was also treated for bronchitis in 2008 and treated for other respiratory illnesses in 2009 and 2007.  See id. at 4-8.  In addition to these medical records, defendant's mother testified credibly at the hearing that defendant experienced respiratory illnesses "over and over" throughout his adolescence, but that he did not always seek medical care.

Also of note, defendant has a documented history as a smoker prior to his incarceration.  Doc. no. 32-4 at 6.  The CDC acknowledges that smoking can render people "immunocompromised," putting them in the high-risk category.[5]  And a recent study shows that people who currently smoke or previously smoked cigarettes are at a substantially higher risk for complications from COVID-19 than non-smokers.[6]  Defendant's documented history of bronchitis, "reactive airway disease," and smoking convince the court that he is at a substantially higher risk of

---

[5] CDC, People Who Are at Higher Risk for Severe Illness, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html  (last visited May 22, 2020).

[6] See Elizbeth Fernandez, University of California San Francisco, Smoking Nearly Doubles the Rate of COVID-19 Progression, https://www.ucsf.edu/news/2020/05/417411/smoking-nearly-doubles-rate-covid-19-progression (last visited May 22, 2020).

experiencing severe illness or complications from COVID-19.  Cf.
United States v. Khawaja, No. 18-CR-127-LM, 2020 WL 1940848, at
*4, *6 (D.N.H. Apr. 22, 2020) (denying compassionate release
request where defendant submitted no medical records evidencing
his "breathing difficulties").

The court acknowledges that defendant's more recent
medical records from his current incarceration do not reflect
any ongoing respiratory issues.  However, the health screenings
conducted by the Bureau of Prisons appear directed towards
detecting current problems, not long-term health conditions.
See, e.g., doc. no. 32-3 at 1 (showing "denied" as to
respiratory issues).

The government argues that the court should not find
defendant particularly vulnerable to COVID-19 because he does
not have a documented diagnosis for "chronic bronchitis."  Given
the novelty of the coronavirus and the medical community's
evolving knowledge about who is high risk, the court is not
inclined to read defendant's medical records as narrowly as the
government urges.  Although defendant's doctor did not use the
phrase "chronic bronchitis" to describe defendant's condition,
the doctor described defendant as "prone to bronchitis" with "a
history of reactive airway disease."  That is close enough to
"chronic bronchitis" for the court.  Moreover, defendant not

only has a history of bronchitis, he also has a history as a heavy smoker.  These two issues place him in a high-risk category.

Defendant has also shown that the risk that he will contract COVID-19 while incarcerated is more than speculative. Many courts, including this one, have recognized that the nature of the prison environment itself enhances the likelihood that prisoners will catch this highly contagious virus.  See Gomes v. US Dep't of Homeland Sec., Acting Sec'y et. al., No. 20-CV-453-LM, 2020 WL 2514541, at *4 (D.N.H. May 14, 2020); Bischoff, 2020 WL 2561423, at *2 (collecting cases).  That is especially true where there is already a documented outbreak at the prison. BOP's website reports that, as of May 26, 2020, 24 inmates and 2 staff members at FMC Devens have tested positive for the virus, and one inmate has already succumbed to the virus.  See BOP, COVID-19 Cases, https://www.bop.gov/coronavirus/ (last visited May 26, 2020)(FMC Devens Facility); doc. no. 39-1.

The court finds that defendant's health condition putting him at higher risk for severe illness from the virus combined with the increased likelihood that he may contract the virus while at FMC Devens constitutes an extraordinary and compelling reason.

10

II.   Danger to Safety of Others

Next, the court must consider whether, if released, defendant is likely to pose a danger to the safety of any other person or the community.  See U.S.S.G. § 1B1.13(2); 18 U.S.C. § 3142(g).  Relevant factors include the nature of defendant's offense, his history and characteristics, and the nature of the danger he might pose to a specific person or the community at large.  See 18 U.S.C. § 3142(g).

Defendant committed a serious drug offense involving a dangerous drug—fentanyl.  He also possessed a firearm during the commission of that crime, enhancing the dangerousness factor. At the time of that offense, defendant was struggling with substance abuse issues.  Since being incarcerated, however, defendant has completed multiple drug treatment programs.  These rehabilitative efforts mitigate his dangerousness.  Importantly, other than the federal drug trafficking offense, defendant has a minimal criminal history as acknowledged by the government.  The court therefore finds that if released defendant is not likely to pose a danger to the safety of any person or the community.

III. <u>Sentencing Factors</u>

Finally, the court must consider whether a reduction in defendant's sentence is consistent with the sentencing factors outlined in 18 U.S.C. § 3553(a) to the extent they are applicable.  See 18 U.S.C. § 3582(c)(1)(A).  Specifically, the court will consider whether the § 3553(a) sentencing factors support a reduction in defendant's sentence, or, alternatively, whether they outweigh the "extraordinary and compelling reasons" discussed above and compel denial of the motion.  See, e.g., United States v. Webster, No. 3:91CR138 (DJN), 2020 WL 618828, at *6 (E.D. Va. Feb. 10, 2020); Ebbers, 2020 WL 91399, at *7.

The court finds that the § 3553(a) factors support a reduction in defendant's sentence.  As mentioned above, defendant has completed multiple drug treatment programs.  He completed Moral Reconation Therapy while incarcerated in Cheshire County and completed a non-residential drug treatment program while in federal prison.  Notably, the prison selected defendant to participate in an outreach program in local schools where defendant speaks to students about the dangers of drug addiction.  Defendant has been an active participant in that program.  As explained above, defendant is not likely to pose a danger to the community.  The court finds that a reduction to time served followed by a term of special supervised release

12

until November 17, 2021 on home confinement will serve the goals of sentencing, including punishment.

IV.   Summary

The court finds that defendant has met his burden of showing that he is entitled to a sentence reduction under § 3582(c)(1)(A).  His underlying health issues combined with the presence of COVID-19 at FMC Devens put him at a substantially high risk of contracting the virus and suffering severe illness or death.  This constitutes an extraordinary and compelling reason warranting release.  Defendant's minimal criminal history and demonstrated efforts to rehabilitate himself show that he is not likely to be a danger to the community and that a reduction in his sentence of incarceration is consistent with 18 U.S.C. § 3553(a).

**CONCLUSION**

For the foregoing reasons, defendant's motion for compassionate release (doc. no. 31) is granted as follows:

1) The defendant's sentence will be reduced to time served.

2) The defendant will be placed on a special term of supervised release until November 17, 2021, which is equivalent to what his discharge date would have been from the BOP, during

13

which time he will remain on home confinement under the terms of release outlined in Appendix A.

3) Following the term of special supervised release, the defendant will be placed on supervised release for a term of four years.

4) During the terms of special supervised release and supervised release, the defendant shall be subject to the Supervision Conditions as set forth in Appendix A.

5) The BOP shall release the defendant immediately following processing.

6) The court recommends that the BOP screen the defendant for COVID-19 within twelve hours prior to his release, and if he is displaying symptoms consistent with COVID-19, test the defendant and share the results with the United States Probation Office in the District of New Hampshire.

7) The court will issue an amended criminal judgment.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

June 3, 2020

cc:   Counsel of Record
      U.S. Probation
      U.S. Marshal

14

**APPENDIX A**

**SUPERVISION CONDITIONS:**

Within seventy-two hours of release from custody of the Bureau of Prisons, the defendant shall report in person to the district to which the defendant is released.

While under supervision, the defendant must comply with the following mandatory conditions:

The defendant must not commit another federal, state, or local crime.

The defendant must not unlawfully possess a controlled substance.

The defendant must refrain from any unlawful use of a controlled substance.  The defendant must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

The defendant must cooperate in the collection of DNA as directed by the probation officer.

While under supervision, the defendant must also comply with the following standard conditions of supervision that have been adopted by this court:

1. The defendant must report to the probation office in the federal judicial district where he is authorized to reside within 72 hours of his release from imprisonment, unless the probation officer instructs him to report to a different probation office or within a different time frame.

2. After initially reporting to the probation office, the defendant will receive instructions from the court or the probation officer about how and when he must report to the probation officer, and he must report to the probation officer as instructed.

3. The defendant must not knowingly leave the federal judicial district where he is authorized to reside without first getting permission from the court or the probation officer.

4. The defendant must answer truthfully the questions asked by his probation officer.

5. The defendant must live at a place approved by the probation officer. If he plans to change where he lives or anything about his living arrangements (such as the people he lives with), the defendant must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, the defendant must notify the probation officer within 72 hours of becoming aware of a change or expected change.

6. The defendant must allow the probation officer to visit him at any time at his home or elsewhere, and he must permit the probation officer to take any items prohibited by the conditions of his supervision that the probation officer observes in plain view.

7. The defendant must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses him from doing so. If the defendant does not have full-time employment he must try to find full-time employment, unless the probation officer excuses him from doing so. If the defendant plans to change where he works or anything about his work (such as his position or his job responsibilities), the defendant must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, the defendant must notify the probation officer within 72 hours of becoming aware of a change or expected change.

8. The defendant must not communicate or interact with someone he knows is engaged in criminal activity. If the defendant knows someone has been convicted of a felony, he must not knowingly communicate or interact with that person without first getting the permission of the probation officer.

9. If the defendant is arrested or questioned by a law enforcement officer, he must notify the probation officer within 72 hours.

10. The defendant must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the

specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).

11. The defendant must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.

12. If the probation officer determines that the defendant poses a risk to another person (including an organization), the probation officer may require him to notify the person about the risk and he must comply with that instruction. The probation officer may contact the person and confirm that the defendant has notified the person about the risk.

13. The defendant must follow the instructions of the probation officer related to the conditions of supervision.

In addition, the defendant must comply with the following special conditions:

1. Upon release, the defendant must obtain transportation directly from the prison to his approved residence. The defendant must eliminate or minimize any stops during that transport.

2. The defendant must self-quarantine in an approved residence during the first fourteen days of his supervised release.

3. The defendant is restricted to his residence at all times during his term of special supervised release except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities as pre-approved by the officer. During this time period, the defendant will be monitored by Location Monitoring technology at the discretion of the probation officer. The defendant must follow the rules and regulations of the location monitoring program. The defendant must pay for the cost of the program to the extent he is able, as determined by the probation officer. If, after six months, defendant has not violated this condition or any other condition of his special supervised release, the court will favorably consider his request to lift this condition.

4. The defendant must participate in a mental health treatment program and follow the rules and regulations of that program. The probation officer, in consultation with the treatment provider, will supervise the defendant's participation in the program (provider, location, modality, duration, intensity, etc.). The defendant must pay for the cost of treatment to the extent he is able, as determined by the probation officer.

5. The defendant must participate in an outpatient substance abuse treatment program and follow the rules and regulations of that program. The probation officer will supervise the defendant's participation in the program (provider, location, modality, duration, intensity, etc.). The defendant must pay for the cost of treatment to the extent he is able, as determined by the probation officer.

6. The defendant must not use or possess any controlled substances without a valid prescription. If the defendant has a valid prescription, he must disclose the prescription information to the probation officer and follow the instructions on the prescription.

7. The defendant must submit to substance abuse testing to determine if he has used a prohibited substance. The defendant must pay for the cost of testing to the extent he is able, as determined by the probation officer. The defendant must not attempt to obstruct or tamper with the testing methods.

8. The defendant must not use or possess alcohol.

9. The defendant must not go to, or remain at any place where he knows controlled substances are illegally sold, used, distributed, or administered without first obtaining the permission of the probation officer.

10. The defendant must not knowingly purchase, possess, distribute, administer, or otherwise use any psychoactive substances (e.g. synthetic marijuana, bath salts, etc.) that impair a person's physical or mental functioning, whether or not intended for human consumption, except with the prior approval of the probation officer.

11. The defendant must submit his person, property, house, residence, vehicle, papers, computers (as defined in 18 U.S.C. § 1030(e)(1)), other electronic communications or data storage devices or media, or office, to a search conducted by the United

States probation officer. Failure to submit to a search may be grounds for revocation of release. The defendant must warn any other occupants that the premises may be subject to searches pursuant to this condition. The probation officer may conduct a search under this condition only when reasonable suspicion exists that the defendant has violated a condition of supervision and that the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner.